UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

PIERRE JAMEL DAVIS,

Defendant.

CASE NO. 2:22-cr-00077-TL

ORDER DENYING MOTION FOR
EARLY TERMINATION OF
SUPERVISED RELEASE

Defendant Pierre Jamel Davis was sentenced to a term of imprisonment and supervised release following a guilty plea. This matter is now before the Court on Mr. Davis's Motion for Early Termination of Supervised Release. Dkt. No. 5. Having reviewed Mr. Davis's motion, the Government's response (Dkt. No. 7), Mr. Davis's reply (Dkt. No. 9), and the relevant record, the Court DENIES the motion.

I.      BACKGROUND

A.      Sentencing in the Eastern District of Washington

On December 5, 2019, Mr. Davis was sentenced in the Eastern District of Washington to 30 months of imprisonment and three years of supervised release after pleading guilty to a

charge of Felon in Possession of a Firearm and Ammunition under 18 U.S.C. §§ 922(g)(1), 924(a)(2) (also referred to as "the underlying offense"). *United States v. Davis*, No. CR19-23, Dkt. No. 35 at 1 (E.D. Wash. Jan. 13, 2020). His sentence ran concurrently with a state-court conviction of First Degree Promoting Prostitution. Dkt. No. 2-2 at 2, Dkt. No. 7 at 2.

**B.      Transfer To the Western District of Washington**

On April 20, 2022, Mr. Davis began his term of supervised release. Dkt. No. 5 at 2. The term is set to expire on April 19, 2025. *Id.* At the time of his sentencing, Mr. Davis told the court that he wanted to get away from Spokane to get away from the people who influenced him in his youth. Dkt. No. 9 at 1.

On May 26, 2022, this matter was transferred to this District at Mr. Davis's request after he moved from Spokane (in the Eastern District of Washington) to Auburn (in the Western District of Washington) to live with his father and stepmother. Dkt. No. 8 at 1 (sealed). His father and stepmother provide him with a stable residence and support. Dkt. No. 5 at 4. Despite moving to the Western District, Mr. Davis still maintains ties to Spokane, where his 10-year-old son lives. *Id.* Mr. Davis visits his son every other month, with permission from U.S. Probation and Pretrial Services ("Probation"). Dkt. No. 8 at 1. Probation also reports a "female friend, who appears to live in Eastern Washington" as part of his social network. *Id.* at 2. Since his supervised release began, Mr. Davis has maintained full-time employment at the Low-Income Housing Institute ("LIHI"), a nonprofit organization that provides "tiny homes" and shelters for community members experiencing homelessness. Dkt. No. 5 at 3.

**C.      Request for Early Termination**

Mr. Davis now brings the instant motion for early termination of supervised release. Dkt. No. 5. The Government opposes. Dkt. No. 7. Probation's response notes that it cannot endorse the motion due to national policy criteria set forth by the Administrative Office of the United

1    States Courts ("AO"), even though a probation officer had earlier told Defense counsel that

2    Probation had "no objection to early termination" given Mr. Davis's stable housing and

3    employment and his being "a positive figure in his son's life." Dkt. No. 5-1 at 2; Dkt. No. 8 at 2.

4                                    II.    LEGAL STANDARD

5          A district court has "broad discretion in determining whether to grant a motion to

6    terminate supervised release." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (citing

7    18 U.S.C. § 3583(e)(1); then citing *United States v. Hook*, 471 F.3d 766, 771 (7th Cir. 2006)).

8    After considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may

9    terminate a term of supervised release after one year has expired "if it is satisfied that such action

10   is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C.

11   § 3583(e)(1). The relevant sentencing factors are:

12   •    The nature and circumstances of the offense and the history
13        and characteristics of the defendant. 18 U.S.C.
          § 3553(a)(1).

14   •    The need to afford adequate deterrence to criminal conduct.
15        18 U.S.C. § 3553(a)(2)(B).

16   •    The need to protect the public from further crimes of the
          defendant. 18 U.S.C. § 3553(a)(2)(C).

17   •    The need to provide the defendant with needed educational
18        or vocational training, medical care, or other correctional
          treatment in the most effective manner. 18 U.S.C.
19        § 3553(a)(2)(D).

20   •    The kinds of sentence and the sentencing range established
          for the category of offense and category of defendant. 18
21        U.S.C. § 3553(a)(4).

22   •    Any pertinent policy statement by the United States
          Sentencing Commission. 18 U.S.C. § 3553(a)(5).

23   •    The need to avoid unwarranted sentence disparities among
24        defendants with similar records who have been found guilty
          of similar conduct. 18 U.S.C. § 3553(a)(6).

- The need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(7).

Notably, a defendant is not required to demonstrate "undue hardship," *Emmett*, 749 F.3d at 819, or "exceptional behavior," *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022). Instead, "a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *Emmett*, 749 F.3d at 819 (citing *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999)). A court's explanation of its decision "must be sufficiently detailed to permit 'meaningful' appellate review, and it must state the court's reasons for rejecting 'nonfrivolous' arguments." *Id.* at 821 (quoting *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008)).

### III.    DISCUSSION

Mr. Davis argues that his good conduct under supervision supports his request for early termination of supervised release. Dkt. No. 5 at 2–3. In opposition, the Government argues that "early termination is inappropriate primarily due to [Mr. Davis's] criminal history, past gang-affiliation, and the nature of the underlying offense." Dkt. No. 7 at 2–3.

### A.    Sentencing Factors

#### 1.    Nature and Circumstances of Offense and History of the Defendant

The Court first considers the nature and circumstances of the underlying offense and the defendant's history and characteristics. 18 U.S.C. § 3553(a)(1). The underlying offense is Felon in Possession of a Firearm and Ammunition. *United States v. Davis*, No. CR19-23, Dkt. No. 35 at 1 (E.D. Wash. Jan. 13, 2020). Police found the firearm and ammunition while executing a warrant on Mr. Davis's residence as part of an investigation into his potential commercial sex abuse of two minor females. Dkt. No. 7 at 3. The gun had been reported stolen. *Id.* Mr. Davis had the firearm even though he knew he was a felon. Dkt. No. 2-1 at 5.

The Government characterizes Mr. Davis's criminal history as "lengthy and violent" and emphasizes his prior gang affiliation. *Id.* at 2, 3. Prior to this offense, Mr. Davis was convicted of Robbery in the First Degree (2010), Riot-Deadly Weapon (2009), and Robbery in the Second Degree (2007). Dkt. No. 2-1 at 5 (plea agreement from *United States v. Davis*, No. CR19-23, Dkt. No. 23 (E.D. Wash. Sept. 5, 2020)). A little over five years ago, Mr. Davis also was convicted of First Degree Promoting Prostitution stemming from his prostitution of minor-aged girls.[1] Dkt. No. 7 at 2. The nature and circumstances of the underlying offense and Mr. Davis's prior convictions are undoubtedly serious. Mr. Davis's criminal history primarily involves violent felony convictions, and the underlying offense involves a weapon. Therefore, this factor weighs against early termination.

## 2.    Need to Afford Adequate Deterrence and Protect the Public

In evaluating "the need to afford adequate deterrence and protect the public," 18 U.S.C. § 3553(a)(2)(B), the Court considers the Judicial Conference of the United States's Framework for Effective Supervision, which provides guidance to probation officers on the propriety of early termination based on how long a defendant has been under supervision. Guide to Judiciary Policy, Vol. 8, Part E § 360.20. Per this framework, once a defendant has completed 18 months of supervision, there is a presumption in favor of recommending early termination if the following criteria are met:

> (1)    The person does not meet the criteria of a career drug offender or career criminal (as described in 28 U.S.C. § 994(h)) or has not committed a sex offense or engaged in terrorism;
>
> (2)    The person presents no identified risk of harm to the public or victims;

---

[1] It appears, although it is not entirely clear, that this conviction stemmed from the investigation during which Mr. Davis was arrested for the instant gun offense.

(3)     The person is free from any court-reported violations over a
        12–month period;

(4)     The person demonstrates the ability to lawfully self-
        manage beyond the period of supervision;

(5)     The person is in substantial compliance with all conditions
        of supervision; and

(6)     The person engages in appropriate prosocial activities and
        receives sufficient prosocial support to remain lawful well
        beyond the period of supervision.

*See* Guide to Judiciary Policy, Vol. 8, Part E § 360.20(c) (last revised Oct. 20, 2023). "After 18

months, higher risk persons under supervision who have demonstrated a risk reduction (as

demonstrated by a reduction in [the Post Conviction Risk Assessment] level/category) and who

are in substantial compliance with the factors provided above *must* be considered for early

termination." § 360.20(d) (emphasis added).[2]

Mr. Davis filed this motion on December 4, 2023—45 days after reaching the 18-month

point in his supervision. Dkt. No. 5. Probation notes that he is currently at a "moderate" risk to

reoffend. Dkt. No. 8 at 1. As an initial matter, the Court is not required to consider Mr. Davis for

early termination because nothing in the record shows that there has been a reduction in Mr. Davis's

PCRA level/category, nor has Mr. Davis provided evidence to demonstrate such a reduction.

### a.     *First Criterion: Eligibility Based on Criminal History*

Mr. Davis does not dispute that he has been convicted of a sex offense. *See generally*

Dkt. No. 9. This admission renders him ineligible for the presumption of early termination.

Nonetheless, the Court considers the remaining Judicial Conference criteria in evaluating "the

need to afford adequate deterrence and protect the public," 18 U.S.C. § 3553(a)(2)(B).

---

[2] The Post Conviction Risk Assessment ("PCRA") is a scientifically based instrument developed by the AO to
improve the effectiveness and efficiency of post-conviction supervision. United States Courts, *Post Conviction Risk
Assessment*, https://perma.cc/7WYK-EZJV (last visited Feb. 6, 2024).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

b.      ***Second Criterion: Identified Risk of Harm to the Public or Victims***

The Government cites Mr. Davis's criminal history and known gang affiliation as creating a risk of harm to the public. Dkt. No. 7 at 2–3. Mr. Davis's probation report indicates that although he has made positive progress, his PCRA assessment is that he "is at moderate risk to reoffend" based on "the following risk factors: social networks and education/employment." Dkt. No. 8 at 1–2. Mr. Davis's social network is limited because of his move; his current network is small and comprised of his family (father, stepmother, siblings who reside locally and in other districts, and his son who resides in Eastern Washington) and a "female friend" in Eastern Washington. *Id*. at 2.

The Court commends Mr. Davis for recognizing that he needed to remove himself from the Spokane area to get away from the group of people who influenced his youth. *See* Dkt. No 9 at 1. At the same time, the Court recognizes that although his contacts in Spokane are limited, they are not fully eliminated. Probation has approved numerous travel requests to Eastern Washington. Dkt. No. 8 at 1. While Mr. Davis visits that area to spend time with his son, Probation also reports a "female friend" as a notable part of his social network there. Dkt. No. 8 at 2. Of course, the Court encourages Mr. Davis to continue visiting his son and remaining an active part of his son's life. But the Court is concerned about the travel to Spokane and whether those trips will become more frequent in light of his "female friend" there, since a large part of Mr. Davis's success thus far has been due to his removal from Spokane.

c.      ***Third Criterion: Lack of Court-Reported Violations Over a 12–Month Period***

Mr. Davis has been on supervised release since April 20, 2022. *Id.* at 1. In 21 months of supervision, Mr. Davis has maintained compliance without any formal violations reported to the Court. *Id.* at 1. *But see infra* Section III.A.2.e.

### d.     *Fourth Criterion: Ability to Lawfully Self-Manage*

The Judicial Conference has explained that lawful self-management consists of "the person's demonstrated ability to not commit a crime during the period of supervision and beyond," or "making personal choices not to engage in criminal behavior." *See United States v. Shaw*, 445 F. Supp. 3d 1160, 1164 (D. Colo. 2020) (quoting a letter from the Judicial Conference explaining 2018 revisions to its supervised release policy). Probation has stated—and the Government does not refute—that Mr. Davis "has been able to lawfully self-manage since ending state supervision in January 2023." *Id*. at 2.

### e.     *Fifth Criterion: Substantial Compliance with All Conditions of Supervision*

Standard conditions of supervision include "not knowingly leaving the federal judiciary district where you are authorized to reside without first getting permission from the court or the probation officer." Dkt. No. 2 at 3. In April 2023, Probation was contacted by law enforcement in Manzanita County, Oregon, who reported that "Mr. Davis and a young female companion were traveling over the speed limit, reportedly from Seaside to Rockaway Beach, Oregon." Dkt. No. 8 at 2. Mr. Davis claimed he was dating this young woman and was unaware he was in Oregon. *Id*. This incident was not reported as a violation, but in response, Probation placed a hold on travel requests from Mr. Davis for 60 days. *Id*. Neither Party presents further information about this incident. While this incident raises concerns for the Court, it occurred 10 months ago, and Probation notes that Mr. Davis "has performed well on supervision and is deserving of our commendation." *Id.*

### f.     *Sixth Criterion: Engagement in Appropriate Prosocial Activities and Receipt of Sufficient Prosocial Support*

Mr. Davis maintains full-time employment and lives in a stable home with his father and stepmother. *Id.* at 1–2; Dkt. No. 5-1 at 2. Mr. Davis has not provided information about prosocial

activities that he participates in, other than his employment and family relationships. Based on the record, Mr. Davis's support network is comprised mostly of his family and one female friend; Probation has identified this limited network as a risk factor in his PCRA. *See* Dkt. No. 8 at 2–3.

### g.    *Weighing the § 360.20(c) Criteria*

All in all, Mr. Davis has made progress during supervision, as evidenced by his lack of formal court-reported violations or any new crimes. But even though he satisfies some of the § 360.20(c) criteria, his limited network, numerous trips to Spokane, and moderate risk of reoffending weigh heavily in evaluating the need for deterrence and to protect the public. While this is a close call, the Court finds that this factor weighs slightly against early termination.

### 3.    Need to Provide Defendant with Training or Treatment

There does not appear to be a need to provide Mr. Davis with any specific "educational or vocational training, medical care, or other correctional treatment" during his supervision. *See* 18 U.S.C. § 3553(a)(2)(D). Mr. Davis was proactive in pursuing educational opportunities while in the custody of the Bureau of Prisons. During his 30-month sentence, he obtained 20 credits toward an Associate of Arts degree and received HVAC certification. Dkt. No. 5 at 2. He is also gainfully employed full-time doing work that provides a great service to the community. Dkt. No. 8 at 2. Mr. Davis has done so well at his job that he currently oversees 32 employees. Dkt. No 5 at 3. Mr. Davis does not have a documented history of drug abuse, so his term of supervision only requires submission to urinalysis at random points rather than twice per month, and his supervised release is not conditioned on his participation in any substance abuse treatment programs. Dkt. No. 5 at 3. The Parties have not mentioned whether Mr. Davis receives medical care or other correctional treatment. *See generally* Dkt. Nos. 5, 7, 9. Therefore, this factor weighs in favor of early termination.

1

### 4.  Sentencing Range

2

The maximum statutory penalty for Mr. Davis's conviction was 10 years of

3 imprisonment and three years of supervised release. Dkt. No. 2-1 at 1–2. The guidelines range

4 for Mr. Davis's offense level and criminal history category was 30 to 37 months of

5 imprisonment. *United States v. Davis*, CR19-23, Dkt. No. 31 at 2 (E.D. Wash. Nov. 21, 2019).

6 Based on a joint recommendation, Mr. Davis was sentenced to 30 months of imprisonment and a

7 three-year term of supervised release. Dkt. No. 7 at 3; Dkt. No. 8 at 1. Mr. Davis has served over

8 21 months of supervised release, slightly over half of his term. *See* Dkt. No. 8 at 1.

9

The Government points out that the Parties' plea agreement contained a

10 "*joint* recommendation that the Court impose a three-year term of supervised release, to include

11 conditions relating to drug testing and the search of Davis's person, residence, office, or

12 vehicle." Dkt. No. 7 at 3 (citing *United States v. Davis*, CR19-23, Dkt. No. 23 ¶ 11 (E.D. Wash.

13 Sept. 5, 2019) (emphasis in original)). The Government recommended imposition of a sentence

14 at the low end of the applicable guideline range in part because it believed in the "absolute need

15 to have the Defendant on a stringent and structured form of supervision" for a three-year term in

16 light of his gang-influenced criminal history. *Id*. at 3–4 (citing the Government's sentencing

17 memorandum in CR19-23). The Government's stated purpose of the sentence was to "give the

18 Defendant the opportunity to prove to the Court that he is motivated to make necessary changes

19 to his lifestyle and companions." *Id.* at 4. The Government argues that terminating supervision

20 would undermine the seriousness of the offense, especially when supervision was the primary

21 focus during sentencing. Dkt. No. 7 at 4. Mr. Davis argues that at the time of sentencing, he was

22 a different person who had not yet demonstrated that he would follow through on his plans. Dkt.

23 No. 9 at 2.

24

The Court acknowledges and commends Mr. Davis for his progress. The Court also agrees with Mr. Davis that nothing in his plea agreement precludes him from seeking early termination of supervised release. Nevertheless, for the reasons stated by the Government, this factor weighs against early termination.

**5.      Pertinent Policy Statements by the United States Sentencing Commission**

The fourth factor is any pertinent policy statement issued by the United States Sentencing Commission that was in effect on the date the defendant was sentenced. *See* 18 U.S.C. § 3553(a)(2)(D). The Sentencing Commission "encourage[s]" courts to exercise their authority to terminate supervised release "in appropriate cases." U.S. Sent'g Guidelines Manual § 5D1.2 cmt. 5 (U.S. Sent'g Comm'n 2022); *see also United States v. Sandusky*, No. 22-50194, 2023 WL 3034264, at *2 (9th Cir. Apr. 21, 2023) (crediting this policy statement). Neither the Government nor Mr. Davis identifies any statement by the United States Sentencing Commission bearing on whether early termination would be appropriate in this case, and this Court is unaware of any other such statement that would be relevant. Therefore, this factor is neutral.

**6.      Sentencing Disparities**

The Court is not aware of, and the Parties have not supplied, any analogous cases in which a defendant with substantially similar history and circumstances has been granted early termination. *See* 18 U.S.C. § 3553(a)(6). Therefore, this factor is neutral.

**7.      Need to Provide Restitution**

The need to provide restitution, 18 U.S.C. § 3553(a)(7), is inapplicable to this matter because Mr. Davis was not ordered to pay restitution as part of his conviction. Dkt. No. 2 at 5.

**8.      Totality of the Circumstances**

In this case, the nature and circumstances of the underlying offense were very serious. Additionally, Mr. Davis's criminal history is lengthy and made up primarily of violent felonies.

Mr. Davis's past gang affiliation, PCRA results, and continued ties to Spokane suggest he still may be a risk to the public, given that not only his son but also a "female friend" whom he maintains contact with reside in Spokane. Dkt. No. 8 at 2. Further, Probation has identified his current social network as a risk factor for Mr. Davis. *Id.* at 1–2. Finally, Mr. Davis received a very lenient term of imprisonment, and the Government identifies specific reasons why it sought a longer supervision period. For these reasons, the Court finds that the sentencing factors, in their totality, weigh against early termination of supervised release.

**B.      Whether Termination Is Warranted**

Having considered the sentencing factors, the Court must now determine whether early termination of supervised release "is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). In making this determination, the Court keeps in mind two principles. First, "[t]he congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." *See Johnson v. United States*, 529 U.S. 694, 708–09 (2000). Second, supervised release "fulfills rehabilitative ends, distinct from those served by incarceration" and "unlike incarceration, provides individuals with postconfinement assistance." *United States v. Johnson*, 529 U.S. 53, 59, 60 (2000); *see also Pepper v. United States*, 562 U.S. 476, 502 n.15 (2011) (observing that supervised release "serves an entirely different purpose than the sentence imposed under § 3553(a)").

After reviewing the history of this case, Mr. Davis's motion, the Government's opposition, Probation's response, and the relevant record, the Court concludes that Mr. Davis's request for early termination is not warranted because it is not in the interest of justice. Mr. Davis's record of compliance with his supervision over the last 21 months, and his commitment to removing himself from an environment that was not conducive to his progress, are

commendable. However, continued supervision will ensure that Mr. Davis continues a positive trajectory as he adjusts to his new postconfinement life. His PCRA assessment indicates that he is still at moderate risk of reoffending, and Mr. Davis still makes regular visits to Spokane and maintains significant social ties there. Finally, in this case, continued supervision is not particularly burdensome, and even Mr. Davis describes the conditions of supervision as "modest." Dkt. No. 5 at 3.

For these reasons and based on the specific facts presented in this case, the Court finds that early termination of Mr. Davis's supervised release is not in the interest of justice.

## IV.    CONCLUSION

Accordingly, Mr. Davis's Motion for Early Termination of Supervised Release (Dkt. No. 5) is DENIED without prejudice.

Dated this 12th day of February 2024.

Tana Lin
United States District Judge